## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS LIMON, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-444 |
| | § | |
| DOUBLE EAGLE MARINE, L.L.C., | § | |
| | § | |
| *Defendant*. | § | |

### ORDER

Pending before the court is plaintiffs Luis Limon, Porfirio Montalvo, and Manuel Olivarez, Jr.'s ("Plaintiffs") motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Dkt. 18. Having considered the motion, related filings, and the applicable law, the court is of the opinion that the motion for relief from judgement (Dkt. 18) should be DENIED.

### I. BACKGROUND

Plaintiffs contend that they suffered injuries on or about January 9, 2007, when the boat on which they were traveling struck a moored barge (hereinafter, "Barge") and then struck the platform to which the barge was tied. Dkt. 18. They contend that the Barge was not lit and therefore created an unreasonable hazard and obstruction to navigation. Dkt. 1.

On May 17, 2007, plaintiffs Luis Limon and Manuel Olivarez, Jr., filed claims against Berryco Barge Line, L.L.C. and other defendants who were operating vessels in the area where the incident occurred. Dkt. 21. That case is currently pending before the Honorable Lee Rosenthal as Civil Action No. 3:07-00274 (hereinafter "Companion Litigation"). On February 13, 2009, Plaintiffs filed this suit against defendant Double Eagle Marine, L.L.C. ("Double Eagle"), claiming that

Double Eagle owned and operated the Barge.  Dkt. 1.  Double Eagle filed a motion for summary judgment on July 30, 2009, claiming that it did not own or charter the Barge and did not move it to the platform where the incident giving rise to this lawsuit occurred.  Dkt. 8.  Plaintiffs argued in response that they needed additional time to depose a specific witness and conduct discovery.  Dkt. 11.  Double Eagle argued in reply that Plaintiffs had not completed the deposition they contended they needed in the twenty-seven months that litigation involving the incident was pending and in fact had not attempted to schedule it as of the date that Double Eagle filed its reply.  Dkt. 12.  The court held a hearing on the motion for summary judgment on October 7, 2009.  During the hearing, the court suspended the deadlines in the case for 30 days to allow Plaintiffs 30 extra days to conduct discovery.  At the end of the 30 days, Plaintiffs were to either move to dismiss the case against Double Eagle or produce sufficient evidence to overcome the motion for summary judgment.  Plaintiffs did neither.  On November 16, 2009, the court granted Double Eagle's motion for summary judgment and entered a final judgment.  Dkts. 16, 17.

Approximately seven months after this court entered judgment in favor of Double Eagle, on July 23, 2010, the defendants in the Companion Litigation sought leave to file a third-party complaint against Double Eagle.  Dkt. 21.  In the motion, the defendants in the Companion Litigation claimed that newly obtained GPS data implicated one of Double Eagle's tugboats for which GPS data previously had not been available.  *Id.*  Judge Rosenthal granted the motion to file a third-party complaint on July 28, 2010, and the Companion Litigation defendants filed a third-party complaint against Double Eagle the same day.  Dkt. 21.  Double Eagle filed a motion to dismiss in the Companion Litigation based on collateral estoppel, claiming that the issues alleged in third-party complaint had already been resolved by this court.  Dkt. 20.

2

On November 16, 2010, which was approximately four months after the GPS evidence was revealed in the Companion Litigation, Plaintiffs filed a motion for relief from judgment, seeking relief from judgment in favor of Double Eagle under Federal Rule of Civil Procedure 60(b).  Dkt. 18. This was exactly one year after this court entered summary judgment on Plaintiffs' claims against Double Eagle.  Dkts. 17, 18.  Plaintiffs attached a report to their motion from Jason E. Tieman, dated August 20, 2010, in which Tieman noted that the AIS transponder (which generally contains GPS data) assigned to MISS JUK, a vessel that was in dry dock during the relevant time period, corresponds directly with the log entries for the MISS SHARLEE, which is one of the tugs Double Eagle operated in the vicinity of the incident during the relevant time period.  Dkt. 18, Exh. C. Tieman assumed, based on Plaintiffs' counsel's representation, that the AIS unit that was assigned to the MISS JUK was removed and installed in the MISS SHARLEE.[1]  *Id.*  According to Tieman, the AIS data from the MISS JUK correlates with all of the arrivals and departures entered in the MISS SHARLEE's log *except* for one departure time on the date on which the incident occurred. *Id.*  Tieman reviewed the data and the log books and concluded that the "M/V SHARLEE was shifting barges, and or mooring, one or more barges to the platform" near the dock involved in the incident and that, "after considering the lengths provided for the M/V SHARLEE and [the Barge], the distances stopped from the platform appear to correlate with a tug maneuvering with a barge on the day in question."  *Id.*  Plaintiffs claim that this new evidence contradicts the evidence that this court relied on when granting summary judgment and provides cause for relief from judgment pursuant to Rule 60(b).

---

[1]  Plaintiffs claim that Double Eagle's counsel represented to counsel for another party in the Companion Litigation that the AIS transponder for the MISS JUK was removed while in dry-dock and placed on the MISS SHARLEE.  Dkt. 18.

## II. LEGAL STANDARD

Rule 60(b) of the Federal Rules of Civil Procedures outlines six different scenarios in which a party may obtain relief from a final judgment. *See* Fed. R. Civ. P. 60(b). Plaintiffs claim they are entitled to relief under subsections (1), (2), (3), and (6) of Rule 60(b). Dkt. 23. These subsections allow courts to grant relief in the following circumstances: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . [and] (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b) motions must be made within a "reasonable time," and a Rule 60(b) relating, specifically, to subsections (1) through (3) must be made within a "reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60(c)(1).

"The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). "[A]lthough the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the case." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). However, "the desire for a judicial process that is predictable mandates caution in reopening judgments." *Baily v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5ht Cir. 1990).

Courts in the Fifth Circuit considering whether to grant a Rule 60(b) motion consider the following factors:

(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether-if the judgment was a default or a dismissal in which there was no consideration of the merits-the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack."

*Seven Elves*, 635 F.2d at 402.

### III. ANALYSIS

Plaintiffs assert that they are entitled to relief under four different sections of Rule 60(b), but the most relevant provision to which they cite is Rule 60(b)(2), which allows a court to grant relief from a judgment on the basis of newly discovered evidence. "To succeed on a motion for relief from judgment based on newly discovered evidence, . . . a movant must demonstrate: (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003).

**A.      The new evidence would have produced a different result.**

Plaintiffs seek relief from judgment under Rule 60(b)(2) because they have newly discovered evidence that "would certainly have raised a fact issue to preclude summary judgment." Dkt. 23. Double Eagle contends that the expert report is not "new evidence" because it only shows that a Double Eagle vessel was in Sabine Lake the day before the incident, not that it was the last vessel to move the Barge. Dkt. 21. However, the expert (Tieman) opines that the AIS data "correlate with a tug maneuvering with a barge on the day in question." Dkt. 18, Exh. C. When the court granted summary judgment, it found that the "deposition and affidavit testimony make clear that Double

5

Eagle did not own or charter the barge, a point which the plaintiffs concede in their response. . . . Additionally, the deposition testimony and the vessel logs sufficiently demonstrate to the court that Double Eagle has met its initial burden to show that it did not move the barge to the location where it was moored on the night of the accident." Dkt. 16.  The court additionally found that Plaintiffs' arguments that the evidence showed that it was *possible* that Double Eagle moved the barge on the day of the accident  was mere conjecture.  *Id.*  The newly discovered evidence raises this possibility beyond mere conjecture.  Tieman's report raises an issue of material fact as to whether Double Eagle moved the Barge, and if this evidence had been available at the time the court granted summary judgment, it likely would not have done so.

**B.      Plaintiffs exercised reasonable diligence to obtain the evidence.**

Double Eagle contends that Plaintiffs did not exercise reasonable diligence to obtain the newly discovered evidence before the court entered summary judgment.  Dkt. 21.  Double Eagle argues that Plaintiffs could have hired an expert like Tieman while their case against Double Eagle was pending, but they failed to do so.  *Id.*  The court agrees that Plaintiffs could have hired an expert like Tieman while their claims against Double Eagle were pending in this court.  However, Plaintiffs did not know at the time that the MISS SHARLEE was equipped with another vessel's AIS transponder on the day in question.  Plaintiffs claim that Double Eagle did not disclose the involvement of the MISS JUK or its AIS transponder in its responses to Plaintiffs' discovery requests in this litigation, and that Double Eagle's vessel logs demonstrate that Double Eagle's vessels were not near the platform at the time and date in question.  Dkt. 23.  It was not until after the court granted summary judgment that Double Eagle disclosed that MISS JUK's transponder was attached to the MISS SHARLEE.  *Id.*  Thus, while Plaintiffs could have sought production of the

6

GPS data from Double Eagle's other vessels while this case was pending, it did not appear necessary to do so based on Double Eagle's discovery responses.

**C.      Plaintiffs did not bring their Rule 60(b) motion within a "reasonable time."**

While the new evidence provides weight to the *Seven Elves* factors dealing with substantial justice and the desire to hear cases on the merits, the balance tips toward ensuring the finality of judgments when one considers the timeliness of the motion.  Plaintiffs learned about the transponder switch in July 2010, and the expert report upon which they base their conclusions is dated August 20, 2010, yet they did not file a motion for relief from judgment until November 16, 2010.  Under Rule 60(c), a motion for relief from judgment due to newly discovered evidence "must be made within a reasonable time—and . . . no more than a year after the entry of judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).  "'[T]he one-year period [enunciated in Rule 60(c)] represents an extreme limit, and the motion will be rejected as untimely if not made within a "reasonable time," even though the one-year period has not expired.'" *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) (quoting Wright & Miller, Federal Practice and Procedure, Civil § 2866, p. 232)).  "There is no hard and fast rule as to how much time is reasonable for filing of a Rule 60(b) motion." *Id.*  "'What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties.'" *Id.* (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)); *see First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992) (noting that what constitutes a "reasonable time" depends on the particular facts of the case).

Plaintiffs claim that the delay in bringing their Rule 60(b) motion was reasonable because, "instead of running to the courthouse, Plaintiffs worked with the defendants in the [Companion Litigation] to ascertain all additional facts before filing the subject motion." Dkt. 23. Plaintiffs state that they "waited until all attempts at additional discovery were exhausted before filing the motion, prior to the one year deadline to file this motion." *Id.* Plaintiffs assert that Double Eagle "frustrated that effort" by seeking protective orders prohibiting depositions of two Double Eagle employees as well as protection from answering discovery. *Id.* The record in the Companion Litigation, however, refutes this assertion. The defendants in the Companion Litigation filed their motion for leave to file a third-party complaint against Double Eagle on July 23, 2010. *See* Companion Litig. Dkt. 142. Judge Rosenthal granted that motion on July 28, 2010. *See* Companion Litig. Dkt. 144. Plaintiffs filed their motion for relief from judgment in this case on November 16, 2010. Dkt. 18. Double Eagle did not file a motion for protective order in the Companion Litigation until December 16, 2010, which is one month *after* Plaintiffs filed their motion for relief from judgment in this case. *See* Companion Litig. Dkt. 178. Thus, Double Eagle's filing of a motion for a protective order did not contribute to Plaintiffs' delay in filing their motion for relief from judgment.[2]

If the new information is sufficient cause for the court to reconsider its judgment in this case, then there was no need to wait for further discovery in the Companion Litigation. The delay between the discovery of the new information and Plaintiffs' filing of the Rule 60(b) motion was almost four

---

[2] The motion for a protective order in the Companion Litigation sought protection from discovery and depositions propounded by defendants in the Companion Litigation. Companion Litig. Dkt. 178 & Exhs. A&B. One of the defendants requested to take the depositions of two Double Eagle representatives in October 2010. Companion Litig. Dkt. 178, Exh. B. A different defendant requested written discovery from Double Eagle on *November 16, 2010*, which, interestingly, is the very date that Plaintiffs filed their motion for relief from judgment in this case. Companion Litig. Dkt. 178, Exh. A. There is no motion for a protective order from discovery sought by Plaintiffs in the Companion Litigation, and Plaintiffs did not file a motion to compel.

months. This delay was unreasonable. *See, e.g.*, *Henriquez v. Astrue*, 499 F. Supp. 2d 55, 57 (D. Mass. 2007) (finding that a plaintiff who learned of new information on April 6, 2007 but did not file a motion to vacate under Rule 60(b) until July 16, 2007, which was within one year of the entry of judgment, did not file it within a reasonable time); *Thompson v. Paul*, No. CIV-05-0990-PHX-MHM, 2007 WL 973975, at \*3 (D. Ariz. Mar. 30, 2007) (finding that a six-month delay between discovering new evidence and filing the Rule 60 motion was unreasonable).

This conclusion is supported by the Seventh Circuit's ruling in *Kagan v. Caterpillar Tractor Co.*, 795 F.2d at 603-11. In *Kagan*, the district court dismissed plaintiff Marvin Kagan's complaint on June 19, 1984, after his attorney failed to file a response to the defendant's motion to dismiss and failed to appear at a pretrial conference. *Id.* at 603. Kagan allegedly did not learn about the dismissal until August 1984. *Id.* at 610. In August 1984, an attorney purporting to represent Kagan called defense counsel and advised that he was going to file an appearance on behalf of Kagan shortly and file a motion to reinstate. *Id.* at 604. The new attorney later claimed that he was not officially retained until October 1984. *Id.* at 610. Additionally, he claimed that the previous attorney did not cooperate in turning over Kagan's file. *Id.* The new attorney filed a motion to reinstate, but he did not do so until December 11, 1984. *Id.* at 610-11. The trial court denied the motion to reinstate, noting that if it were to reinstate the case, it "'might as well throw out the rules of civil procedure and the local rules of this court.'" *Id.* at 605. Kagan's new attorney filed a motion to reconsider, which the trial court also denied. The trial court, in denying the motion to reconsider, pointed out that Kagan had learned of the dismissal in August and that from "'late August to December 11 . . . there was no contact with this court concerning any intention concerning the litigation other than the fact that [it] was dead litigation.'" *Id.*

9

Kagan appealed the order denying the motion to reconsider.  The Seventh Circuit considered the motion under Rule 60(b)(1) and (6).  The Seventh Circuit noted that Kagan's excuse as to the difficulty in retaining counsel and obtaining his file from his previous attorney "might explain a brief delay in the preparation and filing of a motion to reinstate, . . . [but] they do not justify the total silence of Kagan and his attorney . . . and the inaction of [Kagan's new attorney] for more than 45 days from mid-October until December 11, 1984. . . . If [the previous attorneys'] lack of cooperation . . . was causing delay, [Kagan] certainly should have advised the trial judge that [the previous attorney] refused to hand over the case file."  *Id.* at 611.  Indeed, at "the very least, Kagan or one of his counsel should have informed the court that they intended to ask leave of the Court to reinstate the case and were in the process of preparing the proper motion papers to file with the court."  *Id.* The Seventh Circuit concluded that the trial court did not abuse its discretion in denying Kagan's motions to reinstate and reconsider.  *Id.* at 612.  Here, Plaintiffs, like Kagan, failed to advise the court that they had grounds for reinstatement in a timely manner.

Plaintiffs imply that they were not concerned about waiting to file a motion while they conducted additional discovery because the "deadline" to file the motion was one year from the date of judgment.  The "deadline" for a Rule 60(b) motion, however, is a "reasonable time."  Fed. R. Civ. P. 60(c).  The one-year deadline for motions filed under Rule 60(b)(2) is an "extreme limit," after which, no matter how reasonable the delay, relief cannot be obtained.  *Kagan*, 795 F.2d at 610.  It was unreasonable for Plaintiffs to rely on the extreme limit rather than filing the Rule 60(b) motion as soon as they discovered the new evidence upon which the motion is based.

**D.      Plaintiffs' arguments under Rule 60(b)(1), (3), and (6) are also untimely.**

Plaintiffs argue that they have shown that they are entitled to relief under subsections (1), (3), and (6) of Rule 60(b).  Subsection (1) provides for relief in cases of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Plaintiffs claim that they did not learn about the new evidence because of mistake, inadvertence, surprise, or excusable neglect.  Dkt. 23. Subsection (b)(3) provides relief for in cases of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  Plaintiffs claim that Double Eagle engaged in fraud, misrepresentation, and misconduct, which led to a delay in Plaintiffs' learning about the newly discovered evidence.  Subsection (b)(6) allows for relief for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Plaintiffs simply claim that this catch-all provision is "met here, in light of the facts."  Dkt. 23.

Plaintiffs arguments under these other subsections are variations of their argument that relief should be granted due to the newly discovered evidence.  Changing the subsection under which Plaintiffs bring their motion does not change the facts regarding timing.  If there was a mistake or misrepresentation, Plaintiffs knew about it long before they filed their Rule 60(b) motion.  Section (c) requires a motion under any of the grounds for relief outlined in section (b) to be brought "within a reasonable time."  Fed. R. Civ. P. 60(c).  Plaintiffs learned about these potential grounds for relief in July 2010, and it was unreasonable for them to wait until November to file the motion.

Additionally, specifically with regard to Plaintiffs' claims under subsection (6), subsection (6) is "mutually exclusive from relief available under sections (1)-(5)."  *Hesling*, 396 F.3d at 643.  Thus, the "reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)."  *Id.*  Here, Plaintiffs assert no arguments in relation to subsection (6)

11

that they did not already assert with respect to their arguments under the other subsections. Moreover, to obtain relief under subsection (6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 393, 113 S. Ct. 1489 (1993). Here, assuming *arguendo*, that Plaintiffs are faultless in the delay insofar as not obtaining the information about the transponder until July 2010, they are not faultless in the delay in filing the Rule 60(b) motion once they obtained the new information. Thus, even if subsection (6) and (2) were not mutually exclusive, Plaintiffs are not entitled to relief under subsection (6).

### IV. Conclusion

Plaintiffs' motion for relief from judgment (Dkt. 18) is **DENIED**.

It is so ORDERED.

Signed at Houston, Texas on February 10, 2011.

Gray H. Miller
United States District Judge